IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RECEIVED & FILED
'00 FEB 17 PM 2: 25
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| Plaintiff | * |
| | * |
| v. | * |
| | * |
| ONE 1956 CONVAIR 440 AIRCRAFT, | * |
| SERIAL NO. 353, TAIL NO. N912, | * |
| | * |
| Defendant | * |

CIVIL NO. 98-1681(JP)

**OPINION AND ORDER**

## I.    INTRODUCTION

The Court has before it Claimant Dodita Air Cargo, Inc.'s Motion
for Summary Judgment (**docket No. 58**); the United States' Opposition
(docket No. 59); and Claimant's Reply thereto (docket No. 62).  The
case at bar is a civil in rem forfeiture action filed against
Defendant, a 1956 Convair Aircraft Serial No. 353, Tail No. N 912 AL
("the Aircraft"), which was allegedly used to illegally transport two
aliens within the United States.  The owner of the airplane, Dodita
Air Cargo ("Claimant"), contends that it is uncontested that it was
not involved in any way in the transportation of these aliens and
that it did all it could to prevent such unlawful use of the
aircraft.  Because it is uncontested that Claimant is an innocent
owner, Claimant concludes that the instant forfeiture should be
dismissed.  In the alternative, Claimant argues that any penalty,
forfeiture and/or monetary sanctions imposed against it, would

CIVIL NO. 98-1681(JP)                2

violate the excessive fines and penalties provision of the Eighth Amendment of the United States Constitution.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment serves to "assess the proof in order to see whether there is a genuine need for a trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).  Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is in order when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, [in this case the plaintiff,] reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First National Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Canal Insurance Co. v. Benner, 980 F.2d 23, 25 (1st Cir. 1992).  A fact is material if, based on the substantive law at issue, it might affect the outcome of the case.  See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).  The Supreme Court has stated that "only disputes over facts that might affect the outcome

CIVIL NO. 98-1681(JP)              3

of the suit under the governing law will properly preclude the entry of summary judgment.    Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1985).

In a summary judgment motion, the movant, in this case Claimant, bears the initial burden of "informing the district court of the basis for their motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the movant bears the burden of proof at trial, it must sustain that burden as well as demonstrate the absence of a genuine issue of material fact.    See id. at 331-32 (Brennan, J., dissenting on other grounds).    In view of this standard, the Court finds that the following facts are uncontested.

**III. UNCONTESTED FACTS**

1.   Claimant is a corporation organized and registered under the laws of Puerto Rico.    It is owned in its entirety by its president Lisa Roselló  Segurola ("Roselló").

2.   Roselló is certified by the Department of Transportation and the Federal Aviation Administration as an airline transport pilot.

3.   Roselló is married to Jorge A. Toledo Figueroa ("Toledo"), the owner of Tol-Air, Inc. ("Tol-Air").

CIVIL NO. 98-1681(JP)                4

4.  Roselló is the corporate treasurer and secretary of Tol-Air, Inc.

5.  Claimant is engaged in the business of common cargo carriage.

6.  Since its incorporation, Claimant has been a bona fide air transportation company and has comported as such.

7.  Since its incorporation, Claimant has operated out of the Luis Muñoz Marín International Airport and has been in good standing with the Puerto Rico Ports Authority, which operates the airport.

8.  Claimant has approximately seven employees on its payroll and owns two airplanes.

9.  Claimant is the owner of the in rem Defendant, a 1956 Convair 440 Aircraft, Serial No. 353, Tail No. N912 ("the Aircraft").

10. On February 20, 1997, Claimant entered into a contract with Holsum Bakers of Puerto Rico ("Holsum") for the air carriage of bread and related products to the island of St. Croix, U.S.V.I., among other islands.  The Aircraft was used for daily carriages.

11. On February 19, 1998, Blaine Gardner ("Gardner") and Daniel Edward Todd ("Todd") (collectively, "the Pilots") worked for the Claimant as pilots.  Both worked Claimant's regular run to and from St. Croix for the cargo of Holsum bread.

CIVIL NO. 98-1681(JP)                    5

12.   On April 30, 1998, the Aircraft was seized for allegedly being used in violation of 8 U.S.C. § 1324(a) for transporting illegal aliens Walid Qatoum and Jehad Sarrar (collectively, "the Aliens").

13.   Claimant did not know that the Aliens were illegally present in the United States.

14.   The Pilots did not contact any of Claimant's officials to request authorization to transport the Aliens.

15.   The first time that Roselló learned that the Pilots had allegedly transported two illegal aliens in the Aircraft was when Gardner was arrested on those charges.

16.   The Immigration and Naturalization Service ("INS") has no information that Roselló was involved in the transportation of the Aliens or that Roselló knew that the Aliens were illegally in the United States.

17.   The INS could not confirm that any money had been given to the Pilots to transport the Aliens.  The INS knew that a Holsum employee had taken money from the Aliens to be transported illegally.

18.   During its investigation, INS did not ask the Aliens whether the pilots knew or not that they were undocumented aliens.

19.   The INS did not know whether Claimant had knowledge that the Aliens were being transported.

CIVIL NO. 98-1681(JP)                 6

20. INS interviewed the Pilots before being arrested and before the seizure of the Aircraft. During that interview Gardner denied knowing that either of the Aliens was illegally in the United States. Both admitted to transporting persons related to the airline and cargo clients before, but not aliens.

21. Claimant has never been fined by any Federal or State Government Agency or Department for any violation of customs or immigration laws for providing incorrect information in the declaration of cargo or passengers, the transportation of drugs or contraband or the transportation of illegal aliens. Claimant was not fined by the FAA for the February 19, 1998, incident involving the Pilots and the Aliens.

22. Claimant's pilots know that they can transport its employees, control tower employees, employees of other airlines, and clients or persons related to cargo, and that pursuant to instructions and regulations they can carry no other passengers. This has been Claimant's practice, which it plans to continue in the future.

23. All of Claimant's pilots, including Gardner and Todd, undergo ongoing training, which includes ground training and training of crew members on their duties and responsibilities.

24. For international flights, Claimants' pilots are instructed not

CIVIL NO. 98-1681(JP)                 7

      to carry persons without adequate documentation of proof of citizenship or visa.

25.    Claimant has a servicing and maintenance agreement with Tol-Air whereby the latter services the former's Aircraft.

26.    Tol-Air is a corporation organized in 1986 under the laws of Puerto Rico.

27.    Toledo is the president and sole stockholder of Tol-Air.

28.    Toledo is duly certified as an airline transport pilot by the Department of Transportation and the Federal Aviation Administration.

29.    Since its incorporation, Tol-Air has been engaged in the carriage of cargo and passengers, and is duly certified to do so by the Federal Aviation Administration.

30.    Tol-Air is and has been a bona fide air transportation company and has comported as such to the public.

31.    Tol-Air has never been fined by any Federal or State Government Agency or Department for any violation of customs or immigration laws for providing incorrect information in the declaration of cargo or passengers, the transportation of drugs or contraband, or the transportation of illegal aliens.

32.    Tol-Air has operated out of the Luis Muñoz Marín International Airport since it commenced operations, and has been in good

CIVIL NO. 98-1681(JP)                8

standing with the Puerto Rico Ports Authority, which operates the airport.

33. In 1998, Tol-Air had 12 to 14 airplanes and approximately 50 employees.

34. Some of Tol-Air's aircraft are certified to carry passengers.

35. Tol-Air pilots know that they can transport its employees, control tower employees, employees of other airlines, and clients or persons related to cargo, and that pursuant to instructions and regulations they can carry no other passengers. This has been Tol-Air's practice, which it plans to continue in the future.

36. All of Tol-Air's pilots undergo ongoing training, which includes ground training and training of duties and responsibilities of crew members.

37. For international flights, Tol-Air pilots are instructed not to carry persons without adequate documentation on proof of citizenship or visa. The citizenship/visa documentation is part of the aircraft checklist for international flights.

38. Toledo is the person who administers FAA examinations to Claimant's pilots.

39. Neither Toledo nor Roselló personally know Cesar Toledo, whom they have heard was at one point in time a principal or owner

CIVIL NO. 98-1681(JP)                    9

    of PRINAIR.  Neither Toledo nor Roselló have or have had any

    relation, business or family, with Cesar Toledo.

40.  Neither Toledo,  Roselló, Tol-Air or Claimant has ever been

    employed  by  PRINAIR  or  Cesar  Toledo,  directly  or  as  an

    independent contractor.

## IV.  DISCUSSION

A civil forfeiture is a legal fiction brought against the property as a defendant. "The conceptual basis of the forfeiture is, quite basically, that the property has perpetrated some wrong. . . . The property is the defendant in the case and the burden of proof [to establish that the property was not involved in the predicate act] rests on the party alleging ownership." United States (Drug Enforcement Agency) v. One Jeep, 972 F.2d 472 (2d Cir. 1992). The instant forfeiture action is before the Court pursuant to 8 U.S.C. § 1324(b) which states in relevant part that

> any conveyance, including any vessel, vehicle, or aircraft, which has been or is being used in the commission of a violation of subsection (a) shall be seized and subject to forfeiture, except that (A) no conveyance used by any person as a common carrier in the transaction of business as a common carrier shall be forfeited under the provisions of this section unless it shall appear that the *owner or other person in charge of such conveyance was a consenting party or privy to the illegal act.*

(emphasis added).

CIVIL NO. 98-1681(JP)                    10

In forfeiture suits brought against a seized conveyance on the ground that it was used in violation of 8 U.S.C. § 1324(a), the government must first establish probable cause to institute the action.  See 8 U.S.C. § 1324(b)(5).  The government meets this relatively low burden of proof by showing that there was probable cause to believe that the property in question was used in a way that violated the immigration statute.  See United States v. One 48 Ft. White Colored Sailboat Named Libertine, 59 F. Supp.2d 362, 364 (D. Puerto Rico 1999).  Thus, the Government must first show probable cause with regards to the elements of the crime.  See United States v. One 1984 Chevrolet Truck, 682 F.Supp. 1221 (N.D. Ga. 1988).  In the instant case, the government's case is brought under 8 U.S.C. § 1324(a)(1)(B) which provides criminal penalties for anyone who "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves, or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law."  The Court need not engage in this discussion the government already established probable cause. (docket No. 56).  Therefore, it is now up to the Claimant to rebut the government's prima facie case.  See 8 U.S.C. § 1325(b)(5); United States v. One 1982 Chevrolet Crew-Cab Truck, 810 F.2d 178, 181 (8th Cir. 1987).

CIVIL NO. 98-1681(JP)                    11

### A.   INNOCENT OWNER DEFENSE

In the motion at bar, Claimant argues that the uncontested facts lead to the legal conclusion that it is an "innocent owner" under 8 U.S.C. §1324(b)(1)(A) and, therefore, forfeiture should not proceed against the Aircraft.   In particular, Claimant states that civil forfeiture cannot proceed against a conveyance if its claimant was not involved in or was unaware of the wrongful activity in which the conveyance was involved and did all that could reasonably be expected to prevent the prohibited use of the conveyance.   Claimant supports its position by citing to the Supreme Court's decision in <u>Calero-Toledo v. Pearson Yacht Leasing Company</u>, 416 U.S. 663 (1974).   The <u>Calero-Toledo</u> Court stated that "it would be difficult to reject the constitutional claim of . . . an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property."   <u>Calero-Toledo</u>, 416 U.S. at 689.

Despite relying on this Supreme Court decision, Claimant ignores that the legal status of civil forfeiture has changed since the <u>Calero-Toledo</u> was decided.   Twenty-two years after <u>Calero-Toledo</u>, the Supreme Court revisited the concept of innocent owners as they relate to forfeiture, and dismissed the <u>Calero-Toledo</u> pronouncement as dicta.   See <u>Bennis v. Michigan</u>, 516 U.S. 442 (1996).   Rather than protected by the Constitution, Claimants have to look to the

CIVIL NO. 98-1681(JP)                    12

forfeiture relevant statute to determine whether or not the innocent

owner of a conveyance is protected from its forfeiture.

The relevant statute does not protect innocent owners. In 1981,

Congress strengthened forfeiture authority by eliminating the

"innocent owner" defense to seizure and forfeiture of conveyances

used in violation of 8 U.S.C. § 1324(a). See <u>United States v. One</u>

<u>1979 Lincoln Continental Town Coupe</u>, 603 F. Supp. 620, 622 (W.D. Tex.

1984). Pursuant to 8 U.S.C. § 1324(b)(1)(A),

> no conveyance used by any person as a common carrier in
> the transaction of business as a common carrier shall be
> forfeited under the provisions of this section unless it
> shall appear that *the owner or other person in charge of*
> *such conveyance was a consenting party or privy to the*
> *illegal act.*

(emphasis added). Although Claimant reiterates its innocence to

support its position, it seems to ignore that the statute provides

that a conveyance may be forfeited if a person in charge of the

conveyance was a consenting party. A pilot may be considered a

person in charge of the conveyance. See <u>Austin v. United States</u>, 509

U.S. 602, 612 (1993). Furthermore, upon reviewing previous versions

of the forfeiture statute it becomes apparent that pilots fall within

the purview of persons in charge of the conveyance. Before being

amended in 1986, the forfeiture statute applied to "[a]ny person,

including the owner, operator, pilot, master, commanding officer,

agent, or consignee." Immigration and Nationality Act of 1952,

CIVIL NO. 98-1681(JP)                    13

Subsec. (a) Pub.L. No. 99-603, §112(a) (amended 1986). Rather than limiting the scope of the forfeiture statute, the Court reads the new forfeiture language referring to "other person in charge of such conveyance" as including pilots as being in charge of the conveyance. Therefore, if pilots used an aircrafts in violation of § 1324(a), despite the owners lack of consent, such conveyance may be subject to forfeiture.

**B.   EXCESSIVE FINES CLAUSE**

Although the immigration statute may not provide for an innocent owner defense, Claimant further contends that the instant case should be dismissed because forfeiting the Aircraft would violate the Excessive Fines Clause of the Eighth Amendment of the United States Constitution.

Aside from the Bail Clause, the purpose of the Eighth Amendment is to limit the government's power to punish. See Austin, 509 U.S. at 609 (citing Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 266-67 (1989). In particular, the Excessive Fines Clause of the Eighth Amendment seeks to limit the government's power to "extract payments, whether in cash or in kind, 'as punishment for some offense.'" Id. at 609-10 (citations omitted). In the case of forfeitures, the applicability of the Excessive Fines Clause protection does not hinge exclusively on whether or not the proceeding is criminal or civil, but rather on

CIVIL NO. 98-1681(JP)                14

whether the forfeiture constitutes a punishment. See United States

v. $64,000, No. 97 C 5363, 1999 WL 135299, at *6 (N.D. Ill. Mar. 10,

1999) (citing Austin, 509 U.S. at 610; United States v. $359,000, 25

F. Supp.2d 140, 147 (W.D.N.Y. 1998)).    The notion of punishment

transcends the neatly drawn division of criminal and civil

proceedings as the latter may advance both punitive and remedial

goals. See Austin, 509 U.S. at 610 (citing United States v. Halper,

490 U.S. 435, 447 (1989)). Therefore, before determining whether the

Excessive Fines Clause will prevent the forfeiture of the Aircraft,

the Court must first determine whether civil forfeitures under 8

U.S.C. § 1324 are punitive in nature.

The standard to for establishing that a civil sanction, like

forfeiture, is punitive is not high. Unless it solely seeks remedial

purposes, a civil forfeiture will be considered punitive in nature,

and will be subject to scrutiny under the Excessive Fines analysis.

See Cole v. United States Dept. of Agriculture, 133 F.3d 803, 808

(11th Cir. 1998).   The Supreme Court of the United States has found

on repeated occasions that forfeitures serve as a means to punish.

See id. at 617 (listing cases).   The Supreme Court in Hudson v.

United States, 522 U.S. 93 (1997), went as far as suggesting that all

civil penalties have some deterrent effect.

Although punishment is associated with wrongful behavior, the

Supreme Court has noted that a sanction may be punitive in nature

CIVIL NO. 98-1681(JP)                    15

even if it is imparted to an innocent person. See Austin, 509 U.S.
at 615 ("The same understanding of forfeiture as punishment runs
through our cases rejecting the 'innocence' of the owner as a common-
law defense of forfeiture."). In other words, regardless of the fact
that the forfeiture statute does not provide for an innocent owner
defense, as in the case of 8 U.S.C. § 1324, the intent of the statute
may be punitive. The reasoning behind this proposition is that the
owner is held accountable for the wrongs of those to whom he or she
entrusts his or her property. See id.

    Further, there is an inverse relation between the punitive
nature of a forfeiture statute and its remedial nature. Forfeiting
an object for remedial reasons is made apparent when the purpose is
to remove a dangerous or illegal item from society. See United
States v. One Assortment of 89 Firearms, 465 U.S. 354, 364 (1984).
For instance, forfeiting drugs is remedial because by doing so a
dangerous is removed from society. Forfeiting a conveyance because
it was used in the transportation of aliens, however, hardly serves
any remedial purpose as there is nothing inherently criminal in
owning a conveyance. See One 1958 Plymouth Sedan v. Pennsylvania,
380 U.S. 693, 699 (1965). "The forfeiture of property is a penalty
that has absolutely no correlation to any damages sustained by
society or to the cost of enforcing the law." Austin, 509 U.S. at
621. Civil forfeiture of a conveyance used to transport aliens

CIVIL NO. 98-1681(JP)                16

illegally is punitive in nature because it is tied to the commission

of a crime, the violation of 8 U.S.C. § 1324 (a) and because it

constitutes a payment to the sovereign.  See Valencia Lucena v.

United States, 933 F.Supp. 129, 134 (D. Puerto Rico 1996) (Pieras,

J.).    In view that civil forfeiture under 8 U.S.C. § 1324 is at

least partly punitive, the Excessive Fines analysis must be made.

"A punitive forfeiture violates the excessive fines clause if

it is grossly disproportional to the gravity of defendant's offense."

Bajakajian, 524 U.S. 334;  see also United States v. $ 273,969.04,

164 F.3d 462, 466 (9th Cir. 1999).  "Translating the gravity of a

crime into monetary terms--such that it can be proportioned to the

value of the forfeited property--is not a simple task."  United

States v. 817 N.E. 29th Drive, Wilton Manors, Florida, 175 F.3d 1304,

1309 (11th Cir. 1999).  Although the First Circuit has not

articulated any test on excessiveness, the Second Circuit's set forth

a useful guide of factors in United States v. Milbrand, 58 F.3d 841,

847-48 (2d Cir.1995).  The Milbrand test considers:

> (1) the harshness of the forfeiture (e.g. the nature and
> value of the property and the effect of forfeiture on
> innocent third parties) in comparison to (a) the gravity
> of the offense, and the sentence that could be imposed on
> the perpetrator of such an offense; (2) the relationship
> between the property and the offense, including whether
> use of the property and the offense was (a) important to
> the success of the illegal activity, (b) deliberate and
> planned or merely incidental or fortuitous, and (c)

CIVIL NO. 98-1681(JP)                    17

        temporally or spatially extensive; and (3) the role and
        degree of culpability of the owner of the property.

See Milbrand 58 F.3d at 847-48.

        The factor weighing most heavily in Claimant's favor is that

there is no evidence that Claimant had any role in the transportation

of the Aliens.   Furthermore, Claimant has two airplanes, and the

forfeiture of the Aircraft would constitute a significant loss to

their business.  This uncontested fact indicates that the forfeiture

would result in a harsh consequence for Claimant. Also, there is no

evidence on the record suggesting that the incident involved was

temporally or spatially extensive.  The transportation of the Aliens

in February 1997 is the only incident reported in which Claimant's

Aircraft was involved. It is further uncontested that Claimant has

never had any other run-ins with the authorities pertaining

transportation of aliens.   Finally, based on the circumstances

surrounding the incidents of February 1997, the sentence that could

be imposed to the perpetrator of an offense of illegal transportation

of aliens under 8 U.S.C. § 1324 ranges from 10 to 16 months.  See

U.S.S.G. § 2L.1.1.a.   A sentence of this amount suggests that the

forfeiture of the Airplane is excessive.

**V.    CONCLUSION**

        Despite not being able to avail itself of the innocent owner

defense, forfeiting the Aircraft violates the Excessive Fines clause

CIVIL NO. 98-1681(JP)                18

of the Eighth Amendment of the U.S. Constitution.    Therefore, the

Court hereby **GRANTS** Claimant's Motion for Summary Judgment.


**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of February 2000.


JAIME PIERAS, JR.
U.S. DISTRICT JUDGE